## NIELSON et al. v. UTAH NATIONAL BANK OF OGDEN.

No. 2320.   Decided December 19, 1911 (120 Pac. 211).

1. MUNICIPAL CORPORATIONS—DISSOLUTION—ALLOWANCE OF CLAIMS —EVIDENCE.   In view of Comp. Laws 1907, sec. 294, providing that in case of the disincorporation of a municipality, the court should fix a time for the filing of all claims against it, and such claims shall be treated as denied, evidence at an *ex parte* hearing on certain claims *held* insufficient to warrant their allowance. (Page 100.)

2. MUNICIPAL CORPORATIONS—DISCONTINUANCE — CLAIMS — OBJECTIONS. Under Comp. Laws 1907, sec. 294, providing that upon the disincorporation of a municipality the court shall fix the time for the filing of all claims against such municipality, and shall treat such claims as denied by the municipality, these claims cannot be allowed without evidence, and the citizens of the defunct municipality may object to the allowance of claims upon insufficient evidence. (Page 102.)

3. MUNICIPAL CORPORATION—DISSOLUTION—ALLOWANCE OF CLAIMS —HEARING AND NOTICE. Under Comp. Laws 1907, sec. 294, providing for the disincorporation of municipalities, that the court shall fix the time for the filing of all claims against the municipality, that at the end of such time, the court shall adjudicate such claims, which shall be treated as denied, and that any citizen of the municipality at the time of dissolution may defend against any claim filed or the court may in its discretion appoint some person for this purpose, it is the duty of the court to give notice affording the citizens a hearing before allowing such claims, for while the statute may not in terms require notice, the word "adjudicate" means a solemn and deliberate determination by judicial power of the rights of the parties, and so implies a notice and a hearing, and an order allowing such claims on an *ex parte* hearing without notice is irregular and should be set aside. (Page 102.)

4. MUNICIPAL CORPORATIONS—DISSOLUTION—CLAIMS—SETTING ASIDE —DILIGENCE. Where, within eight days from the time fixed by the court for the filing of claims against a dissolved municipal corporation, a claim was allowed upon an *ex parte* hearing without notice to the citizens, and three days after the allowance they came into court and moved to set it aside, they were not, in view of Comp. Laws, 1907, sec. 294, providing that such claims should be treated as denied, lacking in diligence. (Page 102.)

5. MUNICIPAL CORPORATIONS—DISSOLUTION—CLAIMS—SETTING ASIDE —MERITORIOUS DEFENSE. A showing by the citizens of a dissolved municipal corporation that a claim irregularly allowed was based on a debt incurred in violation of Const., art. 14, sec. 3, providing that no debt in excess of the taxes for the current year shall be created by any municipality, unless the proposition shall have been submitted to a vote, presents a meritorious defense sufficient to warrant the setting aside of the order allowing the claim.[1] (Page 104.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

---

[1] Pardee v. Salt Lake County, 39 Utah, 482, 118 Pac. 122.

In a proceeding for the disincorporation of the City of Huntsville, the claims of the Utah National Bank and others were allowed.

Order refusing to open the order allowing such claims. Jens Nielson and others appeal.

REVERSED AND REMANDED.

*T. D. Johnson* for appellants.

*Halverson & Pratt* for respondent.

STRAUP, J.

This appeal involves proceedings had in the district court to disincorporate Huntsville City, in Weber County. A petition for that purpose was filed in the district court by more than one-fourth of the legal voters of the city. On the 25th day of September, 1909, a notice was published that the question of discontinuance of the city would be submitted to the legal voters of the city at the general municipal election to be held in November, 1909. A vote was taken, canvassed, and return made to the district court, who found that a majority of the legal votes cast was for a discontinuance, and made an order discontinuing the city. The court further caused a notice to be published in a newspaper for a period of at least ten days, requiring all claims against the city to be filed in the district court within three months from the date of the first publication of the notice. The first publication was on the 28th day of April, and the last on the 9th day of May, 1910. Among other claims presented and filed within the time fixed by the court was the verified claim of the Utah National Bank of Ogden for the sum of $3,311.67, which was filed on the 21st day of July, 1910. The time for filing claims expired on the 28th day of July of that year. On the 5th day of August, the court, on *ex parte* proceedings, in chambers, without notice, allowed the claim. The proceedings had with respect to the claim of the Utah National Bank of Ogden were as follows:

40 Utah—7

"Court: We are proceeding with the adjudication of the claims against Huntsville City, which has been disincorporated. You want to introduce those in evidence? Pratt (counsel for Utah National Bank): Yes. Court: Mr. Pratt, in behalf of the Utah National Bank, introduces in evidence the warrants which were issued upon the money which was advanced by the bank according to the resolution. Pratt: Those warrants were presented and cashed by them. Court: Let them be introduced in evidence. That is all you wish to introduce in behalf of your client? Pratt: Yes. Boyd (representing the First National Bank): I will only introduce one of mine. Court: Let it be received in evidence in behalf of the First National Bank. Pratt: Also this copy of the resolution. Court: It may be received on behalf of the Utah National Bank. Boyd: I will supply that other one later."

It is certified to us by the district judge that the above and foregoing testimony, together with the warrants therein referred to, being sixteen in number, and the resolution, was all the evidence taken, heard and considered by the court in respect of the adjudication of the claim of the Utah National Bank of Ogden. Upon that evidence, the court, on the 5th day of August, allowed, and pretended to adjudicate the claim. Other claims were also, on that day, allowed by the court, amounting in all, including that of the Utah National Bank, to the sum of about $4900. The court thereupon ordered a tax levy of twenty mills on the dollar to be made and levied upon the taxable property of the citizens of the city to pay the allowed claims. On the 8th day of August sixty-three citizens of the city, and who were citizens thereof at the time the vote to disincorporate was taken, and who were without knowledge or notice of the allowance and adjudication of the claims, filed a protest in the district court against the allowance and payment of the claim of the Utah National Bank "for the reason that the indebtedness forming the basis of said claim is in excess of the limitation of indebtedness permitted, authorized, and prescribed by the Constitution and the statutes of Utah, no tax having

been levied for the current year in which the said indebtedness was incurred; and for the further reason that said indebtedness which is the foundation for said claim is illegal, the same being unauthorized and having been incurred without any authority of law whatsoever therefor, the proposition to create such indebtedness never having been submitted to a vote of the qualified electors and taxpayers of Huntsville City as prescribed by article 14, sec. 3, of the Constitution of the State of Utah; and that in the creating of said indebtedness the city council exceeded their powers and authority conferred upon them, and in the creation thereof said city exceeded the power and authority conferred upon it by the statutes of the State of Utah." After the filing of that protest, and learning that the court had already made an order allowing and adjudicating the claim of the bank, two of these protestants on their own behalf, and on behalf of a majority of the citizens of Huntsville, on the 20th day of October, filed a petition in the district court in which they prayed that the order theretofore made by the court allowing and adjudicating the bank's claim be set aside, and that a hearing be given upon the protest already filed, and that upon such hearing the claim be disallowed for the reasons set forth in the filed protest. In this petition it was also averred that a majority of the citizens of Huntsville were represented by counsel of record in all of the proceedings had in the district court in respect of the disincorporation of the city; that the last claim presented and filed was on the 27th day of July, 1910; that thereafter the court, without notice and without a hearing, and without sufficient or any evidence to support the bank's claim, allowed and adjudicated such claim on the 5th day of August, 1910; and that as soon as they learned of the filing and presentation of the bank's claim they, on the 8th day of August, 1910, filed a protest against its allowance. The court denied the application to set aside the order of allowance and to grant a hearing, upon the ground that notice of a hearing to adjudicate the claim was not required, that the application was

made too late, and that to vacate the order might render the tax levy invalid. Hence this appeal.

The assignment of errors presents two questions:    (1) Sufficiency of the evidence to support the order allowing the bank's claim; and (2) the ruling refusing to vacate the order and to grant a hearing. We think the appellants are entitled to prevail on both.

The statute relating to the disincorporation of cities (Comp. Laws 1907, sec. 294), so far as material, provides:

"The vote shall be taken and canvassed in the same manner as in other municipal elections, and return thereof made to the district court. If it finds that a majority of the legal votes cast for and against such proposition were cast 'for disincorporation,' then a judgment shall be entered discontinuing the same, and upon the entry of said judgment its corporate powers shall cease, and the court shall cause notice to be given in a manner to be prescribed by it, requiring all claims against the corporation to be filed in said court within a time fixed in the notice, not exceeding six months, and all claims not so filed shall be forever barred. At the expiration of the time so fixed, the court shall adjudicate said claims which shall be treated as denied, and any citizen of such city at the time the vote was taken may appear and defend against any claim so filed, or the court may in its discretion appoint some person for this purpose."

It will be seen that by the statute the claim of the bank was required by the court to be treated as denied. The claim as presented recites that on the 19th day of February, 1907, the mayor and city council of Huntsville City adopted a resolution whereby the mayor was authorized to enter into a contract with the Utah Light & Railway Company to procure "electrical energy" for the use of the inhabitants of the city and "further resolved that the purchase of the necessary wire, transformers, meters, and apparatus for conducting to the city and distributing to the inhabitants thereof such electrical energy heretofore made by the mayor for the city be, and the same is hereby, ratified and approved, and he is hereby authorized to purchase such additional apparatus as

may be necessary for that purpose. He is further hereby authorized and directed to borrow not to exceed the sum of $3000 for a period of three years at six per cent. interest per annum and to deliver the city's warrants therefor bearing interest at such rate, which sum, or so much thereof as may be necessary, shall be used to pay for the apparatus heretofore purchased as well as that the purchase of which is hereby authorized." The claim further recites that on the same day the mayor and city council, on behalf of the city, entered into a contract with the Utah Light & Railway Company "for electrical energy to be supplied by the said Utah Light & Railway Company to said city for the use of the inhabitants of the city" and that thereafter, and on the same day, the mayor, pursuant to the resolution, and on behalf of the city, entered into a contract with the Utah National Bank by the terms of which the bank undertook and agreed to allow the city "a credit of $3000 at the bank and to pay the warrants of said city to that amount drawn thereon as presented" and that the city "in consideration thereof undertook and promised to pay your petitioner the sums of money represented by said warrants so to be advanced and paid thereon by your petitioner with interest at the rate of six per cent. per annum." It is further recited in the claim that between the 25th day of February, 1907, and the 10th day of December, 1910, the city caused to be issued and delivered sixteen warrants in the aggregate sum of $3239.55 payable to different persons named in the warrants which were indorsed, presented to and paid by the claimant. It is also recited that of the aggregate amount paid by the claimant only the sum of $224.64 was repaid by the city, and that there was due and unpaid the principal sum of $3014.91 and interest amounting to $296.76, a total of $3311.67.

When we look at the averments and contents of this claim, the statute which requires the court to treat the claim as denied, and the evidence heretofore referred to, the total lack or want of evidence to support the claim is so appalling that further comment on this point is unnecessary.

But it is said that the protestants and the citizens of the city at the time the vote to disincorporate was taken cannot complain though the allowance and adjudication of the claim were made upon insufficient evidence. That contention is clearly untenable, for, as stated by the trial court, the allowance of this claim rendered it necessary to direct a levy of taxes to be made upon the taxable property of such citizens to pay the claim. And such an order was made and such a levy directed. When the payment of the claim was so directed, surely the citizens of the city whose property is taxed for that purpose have the right to insist that the allowance and adjudication of the claim, which under the statute is deemed denied, shall be made upon, and supported by, some legitimate and competent evidence; and if such an adjudication is made without evidence to support it, their right to complain, and to have such a ruling reviewed, cannot be doubted.

We also think the court erred in refusing to set aside the allowance and adjudication and to grant a hearing on the claim. The manner in which the adjudication was attempted, if not unauthorized, certainly was irregular. The statute provides that "at the expiration of the time so fixed" for the filing of claims "the court shall adjudicate such claims which shall be treated as denied and any citizen of such city at the time the vote was taken may appear and defend against any claim so filed, or the court may in its discretion appoint some person for this purpose." Of course, it is clear what "adjudicate" here means. It means a solemn or deliberate determination by a judicial power upon a hearing of the rights and interests of the parties involved on the issues, and the evidence to be taken and submitted according to some prescribed method, or, in the absence thereof, the usual methods of procedure known to our Code or to the common law, and after a hearing in respect of the matters in issue, to decide and decree what are the respective rights of the parties as they may appear from the law and the evidence adduced. The court here did not do that. It had issues before it. It determined them without

notice or a hearing, on *ex parte* proceedings, in chambers. It attempted to adjudicate them without giving the parties against whom they are intended to be adjudicated their day in court, or any opportunity to be heard. But it is said that the statute does not provide for a hearing or the giving of a notice. Let it be conceded that the statute contains no such express terms, and that the provision that "the court shall cause notice to be given in a manner to be prescribed by it" refers alone to the time to be fixed for the filing of claims, and not to an adjudication of them. That a hearing, and the giving of some kind of a notice with respect to the adjudication of the filed claims, are, nevertheless, required, is necessarily implied from other language employed. The statute does require the court to "adjudicate" the claims. It also provides that any citizen of the city "may appear and defend against any claims so filed, or the court may in its discretion appoint some person for this purpose." These provisions also necessarily require the giving of some kind of a notice of the hearing, otherwise they are rendered ineffectual. To say that a right is given to appear and defend but no opportunity afforded to do so is to deny the right itself.

The protestants, as well as a majority of the citizens of the city, were represented by counsel of record. The statute in express terms confers upon the court the discretion to appoint some person to appear and defend on behalf of the citizens against the filed claims. The court could well have appointed counsel already of record appearing for them, fixed a day for the hearing, and caused a notice thereof to be given such counsel as well as counsel for the claimant. Or, in the absence of appointing that person, the court could have appointed the city attorney of the city, if it had one at the time when the vote to disincorporate was taken, or some other suitable person who fairly would represent and look after the interests of the citizens. So, too, the court, in fixing the time within which to present and file claims, and in causing notice thereof to be given, could, in that notice, also have fixed a time and place for the adjudication

of the claims. The court also, under its general powers, could have fixed a day for the hearing of the claims and caused a notice thereof to be given similar to a prosecution of actions by ordinary proceedings. No good reason appears why the proceedings attempting an adjudication of the claim here was had *ex parte,* without a hearing, and without notice. Within eight days after the expiration of the time to file claims the court allowed the bank's claim. Three days after that, and eleven days after the expiration of the time for filing claims, sixty-three citizens of the city filed a protest against the allowance and payment of that claim. Surely it ought not to be said that they were lacking in diligence. They were not in default, for the statute denied the claims for them.

The only other question in connection with this point is that of a meritorious defense. For, had the court, upon a proper and regular proceeding, adjudicated the claim upon some sufficient evidence to support it, the order of allowance would not be set aside to let in a defense if the defense tendered is not meritorious. The defense here tendered is that the debt upon which the claim of the bank is based was incurred in violation of the Constitution and of the statute. The constitutional provision (article 14, sec. 3) relied upon provides that "no debt in excess of taxes for the current year shall be created by . . . any city, town, or village . . . unless the proposition to create such debt shall have been submitted to a vote" of the qualified electors of the city. In the filed protest it is stated that the debt incurred, and upon which the claim is founded, was in excess of the taxes for the current year in which the debt was incurred—no taxes at all having been levied for the current year in which the indebtedness was created—and that the proposition to create the indebtedness was not submitted to a vote of the qualified electors of the city. We are not now holding that the bank's claim falls within this constitutional provision, or statutory provisions forbidding the creation of the indebtedness in the manner alleged, nor, though it should be held that it did, that the warrants issued

and negotiated by the city and now in the hands of the bank may be defeated on that ground. We do say there is sufficient merit to the controversy to require an adjudication upon the issues raised with respect to it. *Pardee v. Salt Lake County*, 39 Utah, 482, 118 Pac. 122. This is not a court of general original jurisdiction. This is a reviewing court. The court below has not yet adjudicated the claim. Let it do so on a proper proceeding. If either party is aggrieved let him come back and we will review it. We cannot do it in advance.

The order or judgment of the court below allowing and adjudicating the claim of the Utah National Bank of Ogden is therefore reversed and vacated, the court directed to fix a day for a hearing of the claim, to cause notice thereof to be given to counsel for the bank and counsel for the protestants, and to hear and determine the rights of the parties with respect to such claim. Costs to appellants.

FRICK, C. J., and McCARTY, J., concur.